E-FILED
Tuesday, 20 March, 2018  10:59:19 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | |
|---|---|
| DAMON GOODLOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16-cv-04062-JES |
| ) | |
| DR. KUL SOOD, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiff, Damon Goodloe, who proceeds *pro se* and is an inmate at Hill Correctional Center ("Hill"), filed suit under 42 U.S.C. § 1983, alleging that Defendants Kul B. Sood and Neil Fisher, who are both physicians; Defendant Pamela Bloomfield, a nurse practitioner; and Defendant Ruth Ann Brown, a nurse, were deliberately indifferent to his serious medical needs. Plaintiff also alleges that Sood retaliated against him for exercising his First Amendment rights.

Defendants have filed a motion for summary judgment [59] that Plaintiff has moved to strike [61]. Alternatively, Plaintiff has filed a response to Defendants' motion for summary judgment [62], to which Defendants have replied [65]. Based on the Court's review of the parties' pleadings, depositions, affidavits, and supporting documents, Plaintiff's motion to strike is **DENIED** and Defendants' motion for summary judgment is **GRANTED**.

### I. MATERIAL FACTS

On July 24, 2013, Plaintiff arrived at Hill with a medical history of condyloma,[1] which Plaintiff had since 1997. (ECF 59-1: p. 60:10; 59-2: p. 2:3; 59-7: p. 2.) During his initial

---

[1] Condyloma is "a warty growth on the skin or mucous membrane." Dorland's Medical Dictionary, https://www.dorlands.com (last visited Mar. 19, 2018).

1

reception screening at Hill, Plaintiff complained about hemorrhoids. The next day, Plaintiff went to sick call because his hemorrhoids had "flared up again." (59-7: p. 4.) A nurse provided Plaintiff a topical cream and scheduled a follow-up appointment.

During a July 29, 2013, examination, Plaintiff told Defendant Sood, that he had hemorrhoids and constipation for about four years, but he first sought medical attention two years earlier. (59-2: p. 2:4; 59-7: p. 5.) Plaintiff informed Sood that he was experiencing "internal pains" and had observed blood during his bowel movements, which he estimated occurred "maybe once or twice a week" after wiping. (59-1: p. 37:7-19.) Plaintiff "initially thought that [he] had a hemorrhoid problem." (*Id*. at 38:6-7.) Sood noted that Plaintiff refused a digital rectal examination, which prevented him from evaluating Plaintiff further. Plaintiff could not recall refusing Sood's request for a rectal examination during this appoitnment. (*Id*. at 39:23-24.) Sood assessed Plaintiff as having self-reported chronic hemorrhoids. Sood prescribed Colace, a stool softener; Dibucaine, a topical ointment; and scheduled a September follow-up appointment.

On September 26, 2013, Plaintiff told Defendant Sood that the stool softener was not working but mentioned that he had previously used a fiber supplement. Sood noted Plaintiff's refusal to submit to a digital rectal examination, which Plaintiff disputes. Sood assessed Plaintiff with "chronic constipation with reported internal hemorrhoids." (59-2; p. 2:5.) Sood continued Plaintiff's previously prescribed medications and added a fiber supplement.

In November 2013, Defendant Bloomfield conducted a follow-up examination. Bloomfield noted Plaintiff's complaint that he experienced "much pain" during bowel movements "due to internal hemorrhoids." (59-3: p. 2:4; 59-7: p. 13.) Plaintiff disputes that his pain was caused by internal hemorrhoids, asserting that "he did not know what was wrong." (62:

p. 13:27.) Plaintiff reported that the Dibucaine ointment was ineffective, but his stool was softer. Bloomfield assessed Plaintiff with internal hemorrhoids; continued Plaintiff's fiber and Colace prescriptions; and prescribed Anusol hydrocortisone suppositories, which Plaintiff could apply directly to his internal hemorrhoids. (59-3: p. 2:4.)

In December 2013, Defendant Bloomfield re-evaluated Plaintiff and noted that he had "clusters of condyloma" and "external hemorrhoids." (*Id*. at 2:5; 59-7: p. 14.) Although Plaintiff was ultimately treated for an anal fissure in October 2014, Bloomfield did not see an "anal fissure"[2] during her examination. (59-3: p. 2:5.) Bloomfield continued Plaintiff's hydrocortisone suppositories and fiber prescriptions. In January 2014, Bloomfield documented that Plaintiff experienced pain associated with his bowel movements but the pain was "not as bad" with the stool softener. (59-7: p. 15.) Because Plaintiff reported relief when taking Colace, Bloomfield continued that prescription and referred Plaintiff to Defendant Sood to discuss further treatment options.

A week later, Defendant Sood evaluated Plaintiff's condyloma. (59-2: p. 3:7.) Based on his visual inspection of Plaintiff's rectal area, Sood assessed Plaintiff with "condyloma acuminata" or genital warts. (*Id*. at 2:6.) Sood prescribed "Podophyllin topical wart treatment two times a week for 30 days," which Sood would apply. (*Id*. at 2:7.)

On February 20, 2014, Defendant Sood applied the Podophyllin ointment, explaining to Plaintiff that the possible side effects were skin irritation and "boring."[3] (*Id*. at 3:8.) Sood told Plaintiff to wash off the treatment after 20 minutes. Four days later, Plaintiff returned, but he

---

[2] An anal fissure is a small tear in the thin, moist tissue (mucosa) that lines the anus. https://www.mayoclinic.org/diseases-conditions/anal-fissure/symptoms-causes/syc-20351424 (last visited Mar. 19, 2018).

[3] A sensation as of being pierced with a long, slender, twisting object…." Dorland's Medical Dictionary, https://www.dorlands.com (last visited Mar. 19, 2018).

3

refused his second application of Podophyllin. Plaintiff explained that he did not think he had internal condyloma but instead, believed he had internal hemorrhoids. (59-7: p. 18; 62: p. 13:46.) Plaintiff declined suppositories for his internal hemorrhoids because he did not believe they were effective. (62: p. 13:46.) Per Plaintiff's request, Sood prescribed Colace to be administered twice a day for 60 days. Sood noted his plan to conduct a collegial review with another physician regarding Plaintiff's treatment.

On March 4, 2014, Defendant Sood discussed Plaintiff's treatment options with Defendant Fisher. (59-2: p. 4:10; 59-4: p. 3:8.) Fisher's responsibilities included "maintaining sound utilization management guidelines and clinical practice standards," which focused on "the care received outside of the prison setting." (59-4: p. 1:3.) Fisher provided the following rationale underlying his treatment recommendation to Sood:

> I am familiar with and have treated patients with venereal warts, also known as genital warts. The cause of these warts is the Human Papilloma Virus…. Treatment with a topical acid solution is preferable to surgical removal, as surgery typically does not cure the virus. Topical trichloroacetic acid (TCAA) is applied directly to the wart and causes an inflammatory response in the body that stimulates the immune system to attack the virus. It is appropriate to try a 10-12 week course of TCAA and, if the patient does not respond, to consider other treatment options.

(*Id.* at 3:9.) In accordance with Fisher's recommendation, Sood prescribed TCAA.

On March 15, 2014, Plaintiff filed a grievance, claiming that Defendant Sood was "deliberately ignoring" his "internal pains." (59-5: p. 5.) Plaintiff requested to be "treated by a specialist (someone other than … Sood)." (*Id.*) On March 20 and 24, 2014, Plaintiff refused his TCAA treatments. (59-7: p. 22; 59-8: p. 1.) On March 18, 2014, Defendant Bloomfield addressed Plaintiff's complaints of pain associated with bowel movements. Bloomfield documented that Plaintiff "feels [the] problem is internal." (59-7: p. 22.) Bloomfield observed

"multiple external raised white, wart-like tissue," but affirmed "no fissure was visible or I would have noted it." (59-3: p. 3:7.) Bloomfield performed a digital rectal examination and felt "internal hemorrhoids at the six o'clock position." (*Id*.) A check of Plaintiff's stool was negative for blood. Bloomfield assessed that Plaintiff had "[i]nternal hemorrhoids [with] probable condyloma." (*Id*. 59-7: p. 22.) Bloomfield prescribed a hydrocortisone suppository, which Plaintiff was to self-administer twice a day.

On April 9, 2014, Defendant Brown, who was then the director of nursing at Hill, provided Plaintiff's grievance counselor a proposed response to Plaintiff's March 15, 2014, grievance, which was based on her review of Plaintiff's medical records. Brown explained that grievance counselors frequently seek medical staff assistance when responding to a grievance involving medical issues. Brown's response summarized the treatment Plaintiff received.

On April 15, 2014, Plaintiff agreed to undergo the TCAA treatment, which Defendant Sood administered from April 21, 2014, to June 11, 2014. During his June 9, 2014, treatment, Plaintiff complained of pain when he defecated. Sood "observed an external hemorrhoid with condyloma present." (59-2: p. 5:22.) Based on his observation, Sood informed Plaintiff that he would schedule another collegial review, which took place on June 17, 2014, with Defendant Fisher. Fisher noted that Plaintiff "had been treated for three months without improvement" and "agreed that outside colorectal evaluation was appropriate for further treatment options." (59-4: p. 3:10.) Sood stopped administering the TCAA treatments.

Following a June 20, 2014, approval of Plaintiff's colorectal evaluation, a staff assistant, Natalie Williams, who specializes in scheduling approved outside medical appointments for inmates at Hill, faxed Plaintiff's relevant medical records to an approved provider. (59-6: p. 2:2.) On June 27, 2014, the provider contacted Williams, requesting to schedule a laser

cauterization of Plaintiff's condyloma. (*Id*. at 2:6; 59-8: p. 14.) Because the request was a medical procedure instead of a medical evaluation, Williams submitted the provider's request for further review. On July 1, 2014, Defendant Fisher determined that because Plaintiff had not yet been evaluated, approving the cauterization would have been premature. Defendants Sood and Fisher opted to continue conservative treatment with the agreement that Sood would again present Plaintiff's case if no relief resulted. Williams affirmed that "[w]hen the cauterization was declined, it … was not noticed until September [2014] that the evaluation [had] not occurred." (59-6: p. 3:10.)

On July 7, 2014, Plaintiff filed a grievance, claiming that Defendants Sood and Fisher denied his authorization for an outside evaluation. As she had with Plaintiff's previous grievance, Defendant Brown sent a response to Plaintiff's grievance counselor denying Plaintiff's grievance based on her review of Plaintiff's medical records.

On August 14, 2014, Plaintiff sought treatment for "internal hemorrhoid[s]" with complaints of blood. (59-8: p. 19.) During this appointment, Plaintiff allowed Defendant Sood to conduct a digital rectal examination, where Sood noted internal condyloma and visually observed external condyloma. Sood prescribed Naprosyn, a pain reliever, and decided to schedule a third consult to discuss Plaintiff's case. On September 2, 2014, Sood discussed Plaintiff's case with another physician, and they decided to send Plaintiff for an outside evaluation using Plaintiff's preexisting authorization.

On September 22, 2014, a colorectal physician performed the requested evaluation. Plaintiff admitted that at the colorectal specialist assessed Plaintiff as having an anal fissure before performing any diagnostic tests. Plaintiff recalled that the specialist performed a rectal examination until Plaintiff indicated where it hurt. After briefly leaving the examination room,

the specialist returned and told Plaintiff that he had an anal fissure. As a result of his evaluation, the specialist requested to perform (1) a colonoscopy, (2) a procedure to remove Plaintiff's condyloma, and (3) a sphincterotomy[4] to repair Plaintiff's anal fissure. On October 3, 2014, the colorectal specialist performed the aforementioned procedures. Plaintiff confirmed that by January 2017 his internal pain and bleeding had stopped. (59-1: p. 63:5-13.)

During his deposition, Plaintiff stated that Defendant Bloomfield was "the only one that was trying to help me" and acknowledged that Bloomfield "was taking extra steps" by performing a digital rectal examination and prescribing "stronger cream" medication when she assessed Plaintiff with internal hemorrhoids. (*Id*. at 53:1-14.) Plaintiff acknowledged that he named Bloomfield as a Defendant because he "thought [he] had to name every defendant that [he] came in contact with." (*Id*. at 54:16-18; p. 64:4-10.) Plaintiff stated that he sued Defendant Brown because of the information that she provided in response to his grievances, and his belief that Brown should have intervened on his behalf.

Plaintiff sued Defendant Sood based on his belief that (1) Sood was focused on treating the wrong medical condition instead of his internal pain and (2) he should have been sent to a specialist sooner. As to Defendant Fisher, Plaintiff admitted that he did not know Fisher and did not have any physical contact with him. Instead, Plaintiff identified Fisher through his medical records. Plaintiff sued Fisher because "it was his decision" to continue treating Plaintiff on site with TCAA for anal condyloma and "denied [him] access to outside examination and diagnosis." (59-1: p. 57:1-6.) Plaintiff acknowledged that he ultimately saw a specialist, but he does not know who authorized that consultation.

---

[4] A sphincterotomy concerns the "incision of a sphincter." Dorland's Medical Dictionary, https://www.dorlands.com (last visited Mar. 16, 2018).

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

"When opposing a properly supported motion for summary judgment, the non-moving party must 'cit[e] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence … of a genuine dispute.'" *Melton v. Tippeconoe County.*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence in support of the non-movant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252.

## III. ANALYSIS

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical need while he was incarcerated at Hill. Plaintiff also alleges that Defendant Sood retaliated against him for exercising his First Amendment rights. However, prior to addressing those claims, the Court addresses Plaintiff's motion to strike Defendants' motion for summary judgment.

### A. Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment

Plaintiff moves to strike Defendants' motion for summary judgment, arguing that Defendants violated this Court's Local Rules by exceeding the page limitation mandated by Rule 7.1(B)(4). CDIL-LR 7.1(B)(4); *see Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir. 1994) (outlining the consequences for failing to comply with local rules). Rule 7.1(B)(4)(a), which is applicable to a motion for summary judgment, states that "[a] memorandum in support of and in response to a motion must be double spaced and not exceed 15 pages in length." CDIL-LR 7.1(B)(4). Rule 7.1(D)(5) clarifies that the page limitations mandated by Rule 7.1(B)(4) applies, in pertinent part, to the argument section of a motion for summary judgment. CDIL-LR 7.1(D)(5). Contrary to Plaintiff's claim, the argument section of Defendants' motion for summary judgment spans thirteen pages.

Plaintiff also moves to strike Defendant Sood's affidavit, which is appended to Defendants' motion for summary judgment, arguing that it is not based on his personal knowledge. Specifically, Plaintiff claims that Sood does not have personal knowledge of the treatment Plaintiff received from other physicians or nurses and that Sood misidentified the physician who performed his sphincterotomy and condyloma removal. However, in his affidavit, Sood affirmed that he "relied on portions of [Plaintiff's] medical records, which are maintained in the ordinary course of business of the Illinois Department of Corrections." (64: p.

2.)  As Sood correctly notes in his response to Plaintiff's motion to strike, Plaintiff's medical records are admissible under the business records exception to the hearsay rule under Federal Rule of Evidence 803(6).  Fed. R. Evid. 803(6); *see Collins v. Kibort*, 143 F.3d 331, 337-38 (7th Cir. 1998) ("While Rule 803(6) does not require the qualified witness be the person who prepared the record, or that the witness have personal knowledge of the entries in the record, the business records exception does require that the witness have knowledge of the procedure under which the records were created.").

As to Plaintiff's claim that Defendant Sood misidentified the physician who performed his sphincterotomy and condyloma removal, the name of the physician who performed the surgical procedures is immaterial to the Court's ruling on Defendants' motion for summary judgment.  Accordingly, Plaintiff's motion to strike is denied.

### B. Plaintiff's Deliberate-Indifference Claims

#### 1. *The Entitlement to Adequate Medical Care Under the Eighth Amendment*

Inmates are entitled to adequate medical care under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  However, "[e]very claim by a prisoner that he has not received adequate medical treatment is not a violation of the Eighth Amendment."  *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).  The Eighth Amendment safeguards the prisoner against a lack of medical care that may result in pain and suffering which no one suggests would serve any penological purpose."  *Id.* (quoting *Estelle*, 429 U.S. at 103).  "A claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition."  *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

"An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000)). To satisfy the subjective component, a plaintiff must show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The deliberate indifference standard requires an inmate to satisfy a substantial threshold to maintain a claim for cruel and unusual punishment under the Eighth Amendment. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999).

### 2. *The Objective Seriousness of Plaintiff's Medical Condition*

Defendants also do not argue that Plaintiff's condyloma and hemorrhoids were not objectively serious medical conditions. Defendants contend that "[t]he existence of these conditions is significant given that Plaintiff must essentially prove Defendants knew he had something more serious … and ignored it." (59: p. 20.) In this regard, Defendants contend that they are entitled to summary judgment because Plaintiff lacks sufficient evidence to support a finding that they were deliberately indifferent to his anal fissure, which Plaintiff purports was causing his internal pain. The Court limits its discussion accordingly.

### 3. *Plaintiff's Deliberate-Indifference Claim Against Defendant Brown*

Plaintiff stated that he sued Defendant Brown because of the information she provided in response to his grievances, and his belief that Brown should have intervened on his behalf. Brown argues that she is entitled to summary judgment because she may defer to a physician's

11

guidance in responding to Plaintiff's complaints. Specifically, Brown contends that her accurate responses to the grievances Plaintiff filed in March and July 2014 do not establish a basis for liability under § 1983. *See Williams v. Guzman*, 346 F. App'x. 102, 106, (7th Cir. 2009) (holding that plaintiff's deliberate-indifference claim failed because defendant was entitled to rely on medical opinions of jail's medical staff absent evidence defendant had reason to believe plaintiff was not receiving adequate medical care.)

In his response to Defendant Brown's argument, Plaintiff concedes that Brown is entitled to summary judgment. (62: p. 28.) The Court accepts Plaintiff's concession and grants summary judgment in Brown's favor.

### 4. *Plaintiff's Deliberate-Indifference Claim Against Defendant Bloomfield*

Plaintiff's deliberate-indifference claim against Defendant Bloomfield fails because Plaintiff does not establish that Bloomfield was deliberately indifferent to his serious medical condition. *See Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (2016) (quoting *Petties*, 836 F.3d at 728) ("[T]he Supreme Court has instructed us that a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." (emphasis in original)).

Defendant Bloomfield's interaction with Plaintiff occurred during four separate appointments from November 2013 to March 2014. At a November 2013 appointment, Bloomfield noted Plaintiff's complaints of pain during his bowl movements and prescribed suppositories based on her clinical assessment that Plaintiff's pain was being caused by internal hemorrhoids. Bloomfield conducted a follow-up appointment in December 2013, noting that her visual examination did not reveal an anal fissure but instead, the presence of condyloma and

external hemorrhoids near Plaintiff's anus, which prompted Bloomfield to continue Plaintiff's hydrocortisone suppositories and fiber prescriptions.

In January 2014, Defendant Bloomfield again noted Plaintiff's continued complaints of pain associated with his bowel movements and referred Plaintiff to his treating physician, Defendant Sood, to discuss further treatment options. Finally, in March 2014, Bloomfield assessed that Plaintiff had internal hemorrhoids with probable condyloma after she performed a digital rectal examination and prescribed a hydrocortisone suppository to treat his internal pain.

The record in this case does not evince the required mental state for a deliberate-indifference claim against Defendant Bloomfield, and Plaintiff apparently agrees. During his deposition, Plaintiff admitted that he only named Bloomfield as a Defendant because he thought he had to name everyone who he came in contact with during his treatment. However, as to Bloomfield's "indifference" to his medical concerns, Plaintiff stated that Bloomfield was "the only one that was trying to help me" and acknowledged that Bloomfield "was taking extra steps" by performing a digital rectal examination and prescribing "stronger cream" medication when she assessed Plaintiff with internal hemorrhoids. (59-1: p. 53:1-14.) Accordingly, the Court grants summary judgment in Bloomfield's favor.

### 5. *Plaintiff's Deliberate-Indifference Claim Against Defendant Fisher*

As to Defendant Fisher, Plaintiff admitted that he did not know Fisher and did not have any physical contact with him. Instead, Plaintiff identified Fisher through his medical records. Plaintiff filed suit against Fisher because "it was his decision to treat me on site with the [TCAA]," and Plaintiff believed that Fisher "denied [him] access to [an] outside examination and diagnosis." (59-1: p. 57:1-5.) Plaintiff acknowledged that he ultimately saw a specialist but did not know who authorized that consultation.

13

"[I]n order to hold an individual defendant liable under § 1983 for a violation of an inmate's constitutional rights, the inmate must show that the defendant was personally responsible for that violation." *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017). Although direct participation in the deprivation is not required, some involvement, such as knowledge, deliberate or reckless indifference, or authorization of the deprivation is necessary. *Crowder v. Lash*, 687 F. 2d 996, 1005 (7th Cir. 1982).

As earlier noted, to satisfy the subjective condition of his deliberate-indifference claim, Plaintiff had to produce admissible evidence that Defendant Fisher had knowledge of and disregarded a substantial risk of harm. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (2016). As to his first claim regarding the TCAA treatments Defendant Sood administered, Plaintiff fails to offer any evidence or even argue that Fisher's recommendation represented deliberate or reckless indifference. In other words, Plaintiff cannot satisfy his subjective burden of showing Fisher drew the inference that an excessive risk of harm existed but nonetheless consciously chose to disregard that risk. *See Murry v. Barnes*, 122 F. App'x 853, 855 (7th Cir. 2004) ("[A] party opposing a motion for summary judgment may not simply rely on the pleading.").

Plaintiff's second claim that Defendant Fisher denied him access to a colorectal specialist also fails because on this record, no such denial occurred. The evidence presented showed that in June 2014, Fisher conducted a collegial review with Defendant Sood and acknowledged that Plaintiff's TCAA treatments were ineffective. As a result, Fisher agreed that an outside colorectal evaluation was appropriate. Plaintiff merely speculates that Fisher denied the colorectal evaluation and opted instead to pursue in-house conservative treatment. In reality, Fisher later denied a request to proceed with a requested medical procedure because he opined

that the procedure absent a prefatory evaluation was premature.  Thereafter, administrative error caused a two-month delay in proceeding with Plaintiff's approved evaluation.

Without more, which cannot be reasonably inferred from the facts presented, Plaintiff has not satisfied his burden of establishing that Defendant Fisher possessed the requisite mental state. *See James v. Milwaukee County*, 956 F.2d 696 (7th Cir. 1992) ("Deliberate indifference means recklessness in a criminal, subjective sense: disregarding a risk of danger so substantial that knowledge of the danger can be inferred." (internal quotation marks and citation omitted)).

### 6. *Plaintiff's Deliberate-Indifference Claim Against Defendant Sood*

"When a prison medical professional is accused of providing *inadequate* treatment (in contrast to *no* treatment), evaluating the subjective state of mind element can be difficult." *Whiting*, 839 F.3d at 662 (emphases in original).  Neither evidence of medical malpractice nor a mistake in professional judgment is enough to prove deliberate indifference.  *Id*.  "[A] treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Zaya*, 836 F.3d at 805.  "A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment." *Id*.

The type of evidence sufficient for a jury to draw a reasonable inference that a prison official acted with deliberate indifference could include the following: (1) the obviousness of the risk created from pursuing a particular course of medical treatment; (2) the treatment decision was a "substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the [defendant] did not base the decision on such a judgment"; (3) persisting "in

15

a course of treatment known to be ineffective"; and (4) "an inexplicable delay in treatment which serves no penological interest." *Petties*, 836 F.3d at 729-30.

In his affidavit, Defendant Sood posits that he initially provided conservative treatment for Plaintiff's hemorrhoids and condyloma, and when Plaintiff's complaints persisted, he was referred to a colorectal specialist. Sood added that "[a]ll [the] medical care provided to [Plaintiff] was appropriate based on my education, training, and experience." (59-2: p. 7:31.) In his response, Plaintiff does not dispute that he had hemorrhoids or condyloma, which he characterizes as "external" medical concerns. (63: p. 23.) Instead, Plaintiff contends that he was suffering from "internal pain and … occasional bleeding during bowel movements" and despite his pleas of internal pain, Sood continued to treat his external medical concerns. In this regard, Plaintiff asserts that Sood "knowingly" ignored his complaints of internal pain by continuing with a course of treatment that was ineffective. (*Id*. at 24.) However, the record does not support Plaintiff's claim.

In July 2013, Defendant Sood initially addressed Plaintiff's self-reported claims of pain caused by internal hemorrhoids, which caused him to experience sporadic bleeding. Sood attempted to confirm Plaintiff's self-diagnosis by performing a digital rectal exam that Plaintiff could not recall declining. Sood assessed Plaintiff as having self-reported chronic hemorrhoids, prescribed an ointment and stool softener, and scheduled a follow-up appointment. During Plaintiff's September 2013 follow-up examination, Sood ordered a fiber supplement because Plaintiff stated he experienced relief with a fiber supplement than the prescribed stool softener.

Plaintiff then saw Defendant Bloomfield three times over three consecutive months. In January 2014, Bloomfield referred Plaintiff to Defendant Sood because Plaintiff continued experiencing pain associated with his bowel movements. Thereafter, Defendant Sood varied

16

Plaintiff's treatment based on his clinical assessment that Plaintiff was suffering from condyloma acuminata. Specifically, Sood began by prescribing Podophyllin topical wart treatment. When Plaintiff refused that treatment, he conferred with Defendant Fisher, and collectively, they decided to begin TCAA treatments, which occurred between April 21, 2014, to June 11, 2014. However, when that treatment was unsuccessful, Sood again consulted with Fisher, which resulted in a referral to a colorectal specialist. Because of an administrative error, Plaintiff's evaluation was delayed by two months.

Defendant Sood stated that he "did not observe or palpate an anal fissure," which Defendant Bloomfield documented she did not observe during a visual examination or during a subsequent digital rectal examination she conducted on Plaintiff. (59-2: p. 7:31; 59-3: pp. 2:5, 3:7.) Plaintiff responds that Sood could have discovered his anal fissure earlier by ordering a colonoscopy, but during his deposition, Plaintiff admitted that the colorectal specialist discovered his fissure without performing a colonoscopy. Even if Plaintiff's internal pain was caused by the fissure as he contends, at most, Plaintiff's evidence reveals that Sood missed diagnosing that condition, which does not constitute deliberate indifference. *See Cavalieri v. Shepard*, 321 F.3d 616, 626 (7th Cir. 2003) ("Deliberate indifference cannot rest on negligent actions or inactions, but must instead rest on reckless indifference to the plight of an inmate.").

In considering the totality of the circumstances presented and viewing the evidence in the light most favorable to Plaintiff, the Court concludes that the established facts show that Plaintiff experienced a deliberate, measured course of treatment by medical professionals who attempted unsuccessfully to alleviate the internal pain Plaintiff experienced before seeking consultation by outside specialist. Given this record, no jury could reasonably find that Defendants consciously disregarded a serious risk of harm to Plaintiff sufficient to inflict cruel and unusual punishment

within the meaning of the Eighth Amendment. Accordingly, summary judgment is granted in Defendants' favor on Plaintiff's deliberate-indifference claims.

## C. Plaintiff's Retaliation Claim

Plaintiff asserts that Defendant Sood retaliated against him for filing grievances by (1) "aggressively" applying a "very large amount of TCAA to [his] anus," (2) asking personal questions in the presence of other inmates, and (3) displaying a "very nasty attitude." However, to defeat Defendant's motion for summary judgment, Plaintiff must present admissible evidence that shows a genuine dispute exists as to the following three conditions: (1) he "engaged in activity protected by the First Amendment," (2) he "suffered a deprivation that would likely deter First Amendment activity in the future," and (3) "the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).

Defendant Sood does not challenge the first two conditions. Instead, Sood contends that he is entitled to summary judgment because Plaintiff cannot prove causation required under the third condition—that is, that he was motivated to retaliate because Plaintiff exercised his First Amendment right by filing grievances. Sood contends that Plaintiff only offers speculation on his intentions.

A motivating factor is one "that weighs in the defendant's decision to take the action complained of—in other words, it is a consideration present to his mind that favors, that pushes him toward action." *Dace v. Smith-Vasquez*, 658 F. Supp. 2d 865, 881 (S.D. Ill. 2009) (quoting *Hasan v. U.S. Dep't. of Labor*, 400 F.3d 1001, 1006 (7th Cir. 2005)). A plaintiff demonstrates

that his speech motivated the defendant's retaliatory actions by presenting direct or circumstantial evidence. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).

Direct evidence is rare because it is akin to an admission by the defendant that the plaintiff's exercise of his First Amendment right motivated him to retaliate. *Naficy v. Ill. Dep't. of Human Servs.*, 697 F.3d 504, 512 (7th Cir. 2012). On the other hand, circumstantial evidence may permit a trier of fact to infer that retaliation occurred. *Kidwell*, 679 F.3d at 965. "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other[s]…." *Id.* at 966 (quoting *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009)).

In his response to Defendant Sood's motion for summary judgment on his retaliation claim, Plaintiff does not directly address Sood's causation argument on any of his claims. Instead, Plaintiff merely reiterates the three bases for his retaliation claim and that he filed grievances against Sood. (62: p. 29.) Moreover, the Court notes that in responding to Sood's interrogatories regarding the specific proof underlying his claim that Sood was motivated to retaliate, Plaintiff mentioned generally that he had filed grievances and that he believed the treatment Sood provided was inadequate. Thus, Plaintiff seems to be relying on circumstantial evidence regarding the timing of events to create a genuine dispute as to causation.

As mentioned, Plaintiff may establish a genuine dispute on the issue of causation through suspicious timing. However, "[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Instead, "other circumstances must also be present which reasonably suggest that the two events are related." *Id*. Plaintiff has not satisfied his burden because he fails to provide any admissible evidence from which a jury could reasonably infer that Defendant

Sood was motivated to retaliate. *See Arnett*, 658 F.3d at 760 (7th Cir. 2011) (stating that a plaintiff's *pro se* status does not alleviate his burden on summary judgment); *Marion v. Radtke*, 641 F.3d 874, 876-77 (7th Cir. 2011) ("When a plaintiff fails to produce evidence, the defendant is entitled to judgment; a defendant moving for summary judgment need not produce evidence of its own.").

**IT IS THEREFORE ORDERED**:

**1) Plaintiff's motion to strike Defendants' motion for summary judgement [61] is DENIED.**

**2) Defendants' motion for summary judgment [59] is GRANTED pursuant to Fed. R. Civ. P. 56. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff. The case is terminated, with the parties to bear their own costs. All deadlines and internal settings are vacated. All pending motions not addressed in this Order are denied as moot. Plaintiff remains responsible for the $350 reduced filing fee.**

**3) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered on March 20, 2018.

                                            s/ James E. Shadid
                                  JAMES E. SHADID
                            UNITED STATES DISTRICT JUDGE